Larry W. Lee (SBN 228175)
lwlee@diversitylaw.com
Kwanporn "Mai" Tulyathan (SBN 316704)
ktulyathan@diversitylaw.com
Kym Kanenaka (State Bar No. 350890)
kym@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Renia Zadourian (SBN 331252)
renia@rzemploymentlaw.com
**LAW OFFICE OF RENIA ZADOURIAN**
1968 S. Coast Highway, Suite 3727
Laguna Beach, California 92651
(310) 708-4404

Attorneys for Plaintiff Daniel Stein

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL STEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSDEV ALTERNATIVE SERVICES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-05236-MWC-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON PUNITIVE DAMAGES (PHASE II)**<br><br>Date: December 18, 2026<br>Time: 1:30 P.M.<br>Courtroom: 6A<br><br>Action Filed: May 1, 2025<br>Removal Filed: June 9, 2025 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 4

II. LEGAL STANDARD ........ 5

III. ARGUMENT ........ 6

A. A LEGALLY SUFFICIENT EVIDENTIARY BASIS—THE ENTIRE RECORD—SUPPORTS THE JURY'S CONSIDERATION OF DEFENDANT'S FINANCIAL CONDITION. ........ 7

B. DEFENDANT'S EVIDENTIARY OBJECTIONS ARE NOT A BASIS FOR THE COURT TO GRANT JUDGMENT AS A MATTER OF LAW. ........ 13

C. DEFENDANT'S REMAINING AUTHORITIES ARE DISTINGUISHABLE. ........ 17

IV. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Murakami*, 54 Cal. 3d 105, 110 (1991) ........................................ 6, 17, 18

*Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) ..............................7

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) 5, 6, 11, 13

*Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)..........................5

*Gerritsen v. Warner Bros. Entertainment Inc.*, 116 F.Supp.3d 1104, 1135-36 (C.D. Cal. 2015) ..........................................................................................17

*Kelley v. Fundomate, Inc.*, 773 F.Supp.3d 899, 934-935 (C.D. Cal. 2025) ............11

*Martinez v. Costco Wholesale Corp.*, 2023 WL 1931836, at *23 (S.D. Cal. Feb. 10, 2023)....................................................................... ………..6, 17, 18

*Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) ..................................................6

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000) 5, 7, 12, 13

*Viasphere Int'l , Inc. v. Vardanyan*, 2017 WL 1065191, *4 (N.D. Cal. 2017) .........6

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1041-42 (9th Cir. 2003) ..........16

**State Cases**

*Farmers & Merchants Trust Co. v. Vanetik* (2019) 33 Cal.App.5th 638................18

**Rules**

Fed. R. Evid. 901(b)(4) ..........................................................................................14

Rule 50(a)............................................................................................... passim

Rule 801(d)(2)........................................................................................... 14, 15

Rule 807 ................................................................................................... 14, 15

# I. INTRODUCTION

After hearing the evidence in two phases, the jury found that Defendant Transdev Alternative Services, Inc. ("Defendant") acted with malice, oppression, or fraud toward Plaintiff Daniel Stein ("Plaintiff"), and it awarded $10 million in punitive damages. As pertinent to Defendant's instant motion under Rule 50(b), Defendant does not challenge the jury's malice finding. It argues only that the jury lacked evidence of Defendant's financial condition, and that the Court should have excluded the two admitted pages of Transdev Group's 2025 Financial Report, Exhibit 35.

The Court has already rejected both arguments. In denying Defendant's Rule 50(a) motion made at trial, the Court found that irrespective of whether the jury takes into account Exhibit 35, there was "ample information that was introduced in phase one" that provided the jury with Defendant's financial condition. This included Defendant's own Employee Handbook, admitted by stipulation, which describes the transportation enterprise/conglomerate Defendant belongs to. It also included testimony from Defendant's own witnesses—managers and corporate designee, about the size of Defendant's workforce, its company-wide pay bands and raises, and Defendant's fleet of vehicles and monitoring technology used to support the Waymo autonomous vehicles. The jury was then instructed, without objection from Defendant, that there is "no fixed formula" for setting punitive damages. Defendant also had the opportunity to present its own witness regarding its financial conditions (which Defendant did not do) and argue to the jury in closing that it had no information about Defendant's financial condition. The jury rejected that argument.

Defendant offers nothing new with this renewed motion. Defendant repeats all the arguments that the Court already rejected at the close of evidence, including admissibility objections that are not a proper basis for judgment as a matter of law. In sum, applying Rule 50(b)'s standard, viewing all evidence in the trial record and

drawing all reasonable inferences in Plaintiff's favor, the record supplies a legally sufficient basis for the jury's consideration of Defendant's financial condition. The Court should deny Defendant's renewed motion on Phase II in its entirety.

As a side note, Defendant continues to fail to comply with Court's Standing Order as to the use of Artificial Intelligence ("AI"). As noted in Plaintiff's November 16, 2026 filing in response to Defendant's objections to Plaintiff's Application to Tax Costs, Defendant's counsel, Allison Scott's, declaration completely fails to identify which "portion of the" brief incorporates generative AI outputs. Despite Plaintiff putting Defendant on notice of that deficiency, Ms. Scott again fails to comply with the Court's Standing Order and identify which portion of the brief incorporated generative AI outputs. As such, Defendant's motion here should be stricken.

## II. LEGAL STANDARD

A renewed motion for judgment as a matter of law under FRCP 50(b) is governed by a stringent standard. A Rule 50(b) motion is "not a freestanding motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Under Rule 50, a party must make a Rule 50(b) motion for judgment as a matter of law before a case is submitted to the jury." *Id.* A "proper" Rule 50(b) motion is "limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.* A moving party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Id.* (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). In other words, the movant under Rule 50(b) is limited to grounds raised in its Rule 50(a) motion. *Id.*

"The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). Judgment as a matter of law is appropriate only where, the court reviewing all evidence in the record and **drawing**

**all reasonable inferences in favor of the nonmoving party**, but making no credibility determinations or weighing any evidence, there is no legally sufficient evidentiary basis for a reasonable jury to find for that party. *Id.*; *see also Go Daddy Software, supra*, at 961. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, *supra*, at 135. "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Go Daddy Software, supra*, at 961. "[T]he jury's verdict **must be upheld** if there is 'evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *Go Daddy Software, supra*, at 963 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (emphasis added)).

## III. <u>ARGUMENT</u>

Defendant's renewed motion under Rule 50(b) challenges only the jury's $10 million punitive damages award. Under California law, a punitive damages award is assessed under three factors: "(1) the reprehensibility of the defendant's misdeeds; (2) the relationship between the award and plaintiff's compensatory damages; and (3), in view of the defendant's financial condition, the amount necessary to punish the defendant and to deter future misconduct." *Martinez v. Costco Wholesale Corp.*, 2023 WL 1931836, at *23 (S.D. Cal. Feb. 10, 2023) (citing *Adams v. Murakami*, 54 Cal. 3d 105, 110 (1991)); *Viasphere Int'l , Inc. v. Vardanyan*, 2017 WL 1065191, *4 (N.D. Cal. 2017). Defendant's instant renewed motion does not raise the first two factors. Defendant raises its challenge to the amount of the award only in its separate Rule 59(e) motion, which Plaintiff addresses in his opposition to that motion. This motion turns entirely on the third factor: whether the record contained evidence of Defendant's financial condition supporting the jury's punitive damages award. It did.

### A. A Legally Sufficient Evidentiary Basis—The Entire Record—Supports the Jury's Consideration of Defendant's Financial Condition.

The trial record establishes Defendant's ability to pay the punitive award. As explained above, Rule 50(b) asks whether the record, viewed as a whole, and with every reasonable inference drawn in Plaintiff's favor, gave the jury a meaningful basis to decide what amount would punish and deter Defendant. A Rule 50(b) motion can only be granted if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (citing *Reeves*, *supra*, at 149)). That is not the case here when viewing the record as a whole, as the jury had a meaningful basis to award punitive damages.

The Court has also reached that conclusion that the record supports the jury's finding, irrespective of the Financial Report, Exhibit 35. In denying Defendant's Rule 50(a) motion, the Court held that "[i]rrespective of whether the jury takes into consideration pages 12 and 86 from Exhibit 35, there was ample information that was introduced in phase one of this trial to give the jury ... a ballpark sense of the financial condition of Transdev Alternative Services specifically." Declaration of Larry W. Lee ("Lee Decl."), Ex. D at 114:22-115:10.[1] The Court identified that evidence, including "testimony concerning the number of employees," "testimony concerning the rate of pay," testimony concerning an across-the-board increase in rate of pay," and "testimony about various other assets, including the vehicles, the following vehicles that would follow the Waymos." *Id*. The Court concluded that "even before [phase II], there was evidence in the record that the jury could rely on to get a sense of what Transdev

---

[1] Relevant portions of the trial transcript for each day of the second jury trial cited in this Opposition are attached as Exhibits A through D to the concurrently filed Declaration of Larry Lee.

Alternative Services' financial condition was." *Id*.

Even setting aside the Financial Report, the trial record supports that ruling. First, the jury saw the scale of Defendant's operations in Defendant's very own Employee Handbook, Exhibit 17, which was admitted by stipulation of the Parties. In it, Defendant hold itself out to its own employees that the enterprise it belongs to "is the **largest private sector provider of multiple modes of transportation in North America**," that operates in "over 200 cities and communities in the U.S. and Canada," which [e]very year from coast to coast…deliver[s] more than **180 million passenger trips**." Exhibit 17, TAS000223 (emphasis added). The Handbook states that "[i]n over **200 cities and communities in the U.S. and Canada**, we operate transportation systems for cities, counties, transit authorities, airports, universities, corporations and retail customers," and that the enterprise "manage[s] many modes of public transportation including bus, rail, streetcar, bus rapid transit (BRT), paratransit, shuttle and ha[s] deployed multiple pilots of autonomous vehicles in North America and around the world." *Id.* It identifies Defendant as the "**business unit**" that "manages driver recruitment, development and operations for the self-driving car industry," and describes the enterprise as "the North American subsidiary of Transdev Group, **a global leader providing public transportation solutions to cities and communities in 20 countries on five continents**." Exhibit 17, TAS000223-224 (emphasis added). Defendant chose these words and statements to describe itself to its employees, and it stipulated to the admission of this Employee handbook. Defendant cannot now ask the Court to treat it as a business of unknown size!

Defendant's own witnesses confirmed the scale of its Los Angeles operation. Eric Flores, the Autonomous Vehicle Operations Supervisor, testified that "[a]t that time we probably had around 100 vehicles" that he could be monitoring during a single shift, and that he typically supervised "at least 20 to 30" employees himself during his shift as of January 2024. Lee Decl., Ex. C at 29:19-30:2. He

also testified that Defendant had a software on the computers that shows it monitored all the vehicles on the road at the time. *Id.* at 29:10-18. Athena Wong, the Autonomous Vehicle Operations Manager, testified that on the starlight shift alone she supervised "[a]pproximately 40 or more" employees across "three different programs," including "the drivers that are the data collectors, and…the depot staff that help manage the flow of the driverless vehicles." Lee Decl., Ex. B at 221:4-12. This testimony only points to one supervisor in one market within the United States alone. A company that staffs dozens of employees and monitors roughly 100 vehicles on a single overnight shift runs a substantial, continuous operation. That operation requires payroll, a large fleet of cars, technology and facilities that are well-funded by Defendant. From that evidence, a reasonable juror could infer that Defendant has substantial resources from which a punitive award can be paid.

Second, the jury also heard evidence about Defendant's payroll, including hourly rates, shift premiums, and raises applied across the workforce. Plaintiff testified that his pay rose to $28.00 per hour when he became a Waymo Roadside Assistant (WRA), that he "got a $3.00 premium" for working the graveyard shift, and that all WRAs received a $2.00 per hour raise across the board. Lee Decl., Ex. A at 198:1-7. Defendant's own supervisor—Wong, confirmed that Defendant follows a "pay band" meaning that all WRAs, not just Plaintiff, "start at 28, and then once they do get the WRA upscale, it is a dollar raise," and that **"[e]veryone in the company** received a $2 pay bump…for the increase of living." Lee Decl., Ex. B at 247:18-248:1 (emphasis added). Based on testimony from Defendant's own witness, a company that can fund a raise across its entire workforce has resources from which a punitive award can be paid.

Next, the jury heard that Defendant deploys a fleet of vehicles that follow the Waymos and equips them with fleet-management recording technology. Flores described the recording system as "a tool that we use all the time," "a camera that

tracks the location…[and] can see the inside of the car and outside of the vehicle," and that also reports "the tire pressure level and other things like that." Lee Decl., Ex. C at 30:24-31:4. Defendant's corporate designee, Andrew Walsh, testified that Defendant's fleet is equipped with Samsara, which is the "feet management" and "recording devices within [Defendant's] vehicles." *Id.* at 88:3-6. The scale of Defendant's fleet and technology that Defendant equips on its vehicles is an asset base that the jury could properly consider in weighing on the amount of punitive damages to punish and deter Defendant.

All of this evidence in the record came in during Phase I alone. In addition, the record reflects that part of Defendant's business is built on its work for Waymo. Indeed, Defendant's own Employee Handbook describes Defendant as the "business unit" that runs "operations for the self-driving car industry." Exhibit 17, TAS000223. Every operational witness also described Defendant's WRA vehicles as dedicated to the recovering and supporting of Waymo's autonomous vehicles. Lee Decl., Ex. B at 197:13-21, 254:19-255:3; Lee Decl., Ex. C at 28:12-18, 85:17-21, 86:25-87:3. Needless to say, in this day and age, any company involved in running a national business in the self-driving car industry can easily be said to be a well-funded company, typically backed by significant investors.

Nothing about this trial record is new, and nothing in the law has changed since the Court denied Defendant's Rule 50(a) motion. Defendant simply repeats the same argument the Court already rejected. Defendant takes each piece of evidence separately, and asks the Court to declare it meaningless. Defendant characterizes staffing testimony as "compensation expenses and operational demands," describes the vehicle testimony as "[m]onitoring or using a vehicle," and backtracks on its Employee Handbook as a description of "North America's operations, not TAS's financial resources." Mot'n, pp. 11, 13. Defendant also leaves out testimony that hurts it, for example, testimony pertaining to the number of individuals that Wong or Flores supervised, or the number of programs on a

single overnight shift. Defendant's only response to the record as a whole is a single paragraph that lists its mischaracterization of the evidence and concludes that it "remains insufficient when considered together." Mot'n, p. 14. That is not the standard. Indeed, under Rule 50(b), every reasonable inference must be drawn in favor of the nonmoving party. *See Go Daddy Software, supra*, at 961. Following that standard, the Court must reject Defendant's characterizations and inferences about all of the evidence in the record and deny the Rule 50(b) motion.

Indeed, California law imposes no rigid formula to determine financial condition. *See Kelley v. Fundomate, Inc.*, 773 F.Supp.3d 899, 934-935 (C.D. Cal. 2025) ("There is no fixed formula for determining the amount of punitive damages"; and citing CACI No. 3940). Defendant concedes the punitive damages standard, acknowledging that "California does not require one particular type of financial evidence" and that it "does not demand a particular accounting format." Mot'n, p. 9. The size of Defendant's workforce, the company-wide payroll and raises applied, Defendant's vehicle fleet and technology, its place in a transportation enterprise operating in more than 200 cities in the United States and abroad are not unrelated facts. Taken together, they give the jury a meaningful picture of what it would take to punish and deter a company of Defendant's size and operational footprint.

It is also important to note that in reaching the $10 million punitive damages award, the jury was correctly instructed, without objection, on how to use that evidence. As the Court noted, "the jury instruction that **everyone agreed upon** and was read to the jury simply states that, first of all, that there's no fixed formula for determining the amount of punitive damages, and that the jury should consider all of the factors that are listed in that instruction, including whether, in view of that defendant's financial condition, what amount is necessary to punish and discourage future wrongful conduct." Lee Decl., Ex. D at 115:11-24 (emphasis added). Again, Defendant agreed to that instruction. Having accepted a standard

with no fixed formula, Defendant cannot now argue that the jury needed a "balance sheet" or "asset and liability records." The Court further found that "[t]he record does contain evidence that would enable a reasonable juror to make a determination about whether or not the award of punitive damages, if any, bears a relationship to the financial ability of the defendant to pay." *Id.* That finding is correct, and it decides the question Rule 50(b) asks: whether a legally sufficient evidentiary basis existed for a reasonable jury to find as this jury did. *See Reeves*, *supra*, 530 U.S. at 135.

Defendant made this same argument to the jury. In its Phase II closing, Defendant told the jury, "you don't have any information on the defendant's financial condition." Lee Decl., Ex. D at 100:4-12. The jury weighed that argument against the full record and returned a $10 million award. Defendant now asks the Court to accept the argument the jury rejected. Rule 50(b) does not permit that. The Court may not weigh the evidence or substitute its view for the jury's view.

Defendant also argues that its production of Walsh did not shift Plaintiff's burden or give Walsh knowledge about the financial condition. Plaintiff does not contend otherwise. In fact, Plaintiff carried his burden through the Phase I record, as described herein, which the Court found sufficient *irrespective* of the Financial Report. Defendant's argument instead asks the Court to hold the absence of more detailed financial evidence against Plaintiff, when Defendant was the party the Court ordered to make that evidence available. At trial, the Court found that Defendant was "supposed to designate somebody that was going to be able to testify about financial condition," and instead produced a witness who, in counsel's words, "does not have financial condition information for TAS." Lee Decl., Ex. D at 82:12-19, 84:12-17. Essentially, the Court ordered Defendant to have evidence available, and Defendant did not comply with its obligation. Defendant cannot produce a witness claiming he has no financial knowledge, and ask the Court to set

the verdict aside because the record lacks more financial detail. Defendant had every opportunity to produce a witness with financial knowledge, but it intentionally decided not to do so. That is not the fault of anyone other than Defendant itself.

Based on these reasons, the record supplies more than a legally sufficient basis for the jury's consideration of Defendant's financial condition. The Court should deny Defendant's renewed motion on this ground.

**B. Defendant's Evidentiary Objections Are Not A Basis For the Court to Grant Judgment As a Matter of Law.**

Defendant argues that the Court should have excluded pages 12 and 86 of the Financial Report, Exhibit 35, on authentication, hearsay, relevance, and Rule 403 grounds. Those arguments fail for two independent reasons.

First, Defendant's admissibility arguments do not belong in a Rule 50(b) motion. A Rule 50(b) motion asks only whether a legally sufficient evidentiary basis supports the verdict. *Reeves*, *supra*, 530 U.S. at 135; *Go Daddy Software*, *supra*, at 961. It is not a vehicle to relitigate evidentiary rulings the Court made before and during trial. Defendant itself admits that its evidentiary objections "concern whether the jury could consider the Report, apart from whether its contents establish TAS's financial condition." Mot'n, p. 21. Defendant is asking the Court to reconsider its admissibility rulings, not whether the evidence was sufficient.

Even if the Court entertained Defendant's objections and excluded both pages, the result would not change. The Court's Rule 50(a) ruling was expressly made "[i]rrespective of whether the jury takes into consideration pages 12 and 86 from Exhibit 35." Lee Decl., Ex. D at 114:22-115:10. As explained above, the Phase I evidence alone supplied a legally sufficient basis for the jury's consideration of Defendant's financial condition. That evidence included Defendant's own Employee Handbook, the testimony of Defendant's supervisors

about its workforce and fleet, and testimony about company-wide raises. Defendant's attack on two pages of Exhibit 35 therefore cannot entitle it to judgment as a matter of law. The Court can deny this portion of the motion on that basis alone.

Nonetheless, Defendant's objections also fail on the merits. Defendant raised each of them in its Motion in Limine No. 4. The Court considered and rejected each one before trial, and the Court rejected them again at trial. Dkt. 102 at pp. 12-14; Lee Decl., Ex. D at 73:4-90:6. Defendant identifies no new evidence or change in law that would warrant a different result. Specifically, with respect to authentication, Rule 901 requires only "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This can include distinctive characteristics like "appearance, contents, substance, [or] internal patterns of the item." Fed. R. Evid. 901(b)(4). The Court has already held that "[a] report that Plaintiff downloaded from Defendant's parent company's website showing detailed financial statements and the parent company's branding allows for several methods of authentication," and nothing at trial undermined that ruling. Dkt. 102 at pp. 13-14. The Financial Report carries the same branding, contents, and internal patterns the Court relied on. Walsh identified the logo on the cover as the "Transdev Mobility Company logo," and agreed that it is the same logo that appears on Defendant's Employee Handbook, Exhibit 17. Lee Decl., Ex. D at 71:10-14. Page 86 lists Defendant by name, with the same Lombard, Illinois address that appears in Defendant's own employment application, Exhibit 39. *Id.* at 85:16-86:2. Defendant's own counsel confirmed what page 86 shows, conceding that Defendant and Transdev North America "are wholly owned subsidiaries of the larger company." *Id.* at 76:3-14. Defendant cannot dispute that the Report describes exactly that when counsel admitted that to the Court.

With respect to the hearsay objection, Plaintiff moved to admit the Financial Report under Rule 801(d)(2) as a party admission or alternatively under Rule 807,

the residual exception. *Id.* at 73:4-6. Both grounds support admission. Before trial, the Court found that Defendant's challenge under Rule 801(d)(2) was "premature," and that "to the extent that these two methods of admitting the Financial Report are inapplicable, the Report contains sufficient guarantees of trustworthiness that it may be admissible under the residual exception to the hearsay rule." Dkt. 102 at p. 13. The trial record confirmed that finding. The Report is an official, publicly issued annual financial report of the corporate group that holds 100 percent control of Defendant. Lee Decl., Ex. D at 86:3-13. A group-wide financial statement that the parent publishes to the public carries strong guarantees of trustworthiness. Defendant never offered any evidence that a single figure in the Financial Report is inaccurate.

Defendant's Rule 807 argument also turns on its own conduct. Defendant argues that the Report was not more probative than other evidence "reasonably obtainable through discovery." Mot'n, p. 26. But the Court found that Defendant was "supposed to designate somebody that was going to be able to testify about financial condition, and [it] produced someone who [it] just said doesn't have this information." Lee Decl., Ex. D at 84:12-17. Having withheld the more direct evidence the Court expected it to have available, Defendant cannot argue that the Report was inadmissible because more direct evidence existed. As the Court put it, "we have to give the jury something to be able to deliberate on." *Id.* at 84:23-85:2. Defendant's own failure to produce that evidence supports, rather than defeats, admission under the residual exception.

Defendant's relevance argument should also be rejected. In fact, the Court has already held when it ruled on the motions in limine, that the Financial Report is relevant. Dkt. 102 at p. 12. Specifically, the Court reasoned that "[b]ecause Defendant's financial position is highly relevant to any punitive damages phase, and Transdev Group can exercise control over Defendant 'to affect the amount of its returns,' the financial fates of the two entities are intertwined." Dkt. 102 at pp.

12-13. The trial record confirmed that finding. Walsh testified that Defendant has no website of its own. Lee Decl., Ex. D at 68:1-6. Defendant's Employee Handbook directs employees to report safety concerns to the Transdev North America hotline and commits Defendant's own managers to promoting Transdev North America's policies and procedures. *Id.* at 64:15-67:25. **Defendant does not operate apart from its parent entity, but actually utilizes the parent entity's name, website, and policies.** The Court also already rejected Defendant's Rule 403 objection, holding that "these entities are not sufficiently distinct to warrant excluding publicly available financial information regarding Transdev Group, and a jury must have sufficient facts at its disposal regarding a defendant's corporate structure and financial condition when considering whether to award punitive damages." Dkt. 102 at p. 13.

Defendant's renewed arguments on admissibility are the same ones the Court already rejected, and the Court identified then that Defendant may request a limiting instruction on this issue. Dkt. 102 at p. 13. **Defendant never requested a limiting instruction at trial**. Defendant's disagreement with how the jury weighed the Financial Report is not a basis for excluding it after the fact. To the contrary, when the Court asked whether there was any objection to the Phase II punitive damages instruction, Defendant's counsel responded: "No objection from defendant if we reach phase two." Lee Decl., Ex. C at 15:25-16:7; *see Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1041-42 (9th Cir. 2003) (defendants neither objected to the punitive damages instruction nor challenged the sufficiency of the punitive evidence at the close of the evidence).

Defendant next argues that the Financial Report could not be considered absent a basis to pierce the corporate veil. That argument misses the point. Plaintiff never asked the jury to hold Transdev Group or Transdev North America Inc. liable for Defendant's conduct. Indeed, Transdev Group and Transdev North America Inc. are **<u>not</u>** named entities or parties to this action. The two admitted

pages of the Financial Report showed only that Defendant is a wholly owned part of a larger conglomerate and how much revenue that group earns in the United States. Plaintiff offered these pages to show the corporate structure and financial condition for the jury to consider as context, along with Phase I evidence of Defendant's massive operational footprint. Using evidence this way does not require an alter ego finding as Plaintiff does not need to pierce the corporate veil in such a matter to "hold individual shareholders liable for the actions of the corporation." *Gerritsen v. Warner Bros. Entertainment Inc.*, 116 F.Supp.3d 1104, 1135-36 (C.D. Cal. 2015). As such, Plaintiff need not establish the elements under *Gerritsen* to pierce the corporate veil.

Finally, any risk of confusion was minimal. The Court did not admit the entire Financial Report, but admitted only two pages, after requiring Plaintiff to lay foundation for each. Plaintiff's counsel also told the jury it did not need rely on those pages at all. Lee Decl., Ex. D at 101:21-23. The jury was then instructed that there is no fixed formula and that it should consider all of the evidence, an instruction agreed upon by the Parties. Any probative value was not substantially outweighed by any risk of unfair prejudice or confusion.

Based on these reasons herein, the Court should deny Defendant's renewed motion on this ground as well.

**C. Defendant's Remaining Authorities are Distinguishable.**

None of the cases relied on by Defendant supports judgment as a matter of law based on this trial record. In both *Adams v. Murakami*, 54 Cal. 3d 105 (1991) and *Martinez v. Costco Wholesale Corp.*, 2023 WL 1931836 (S.D. Cal. 2023), the jury heard nothing at all about the defendant's financial condition. In *Adams*, "[n]either patient nor Dr. Murakami introduced at trial any evidence of Dr. Murakami's financial condition," so the jury was forced to speculate. 54 Cal. 3d at 109, 114. The court in *Adams* also expressly "decline[d]…to prescribe any rigid standard for measuring a defendant's ability to pay," and it refused to hold "that

any particular measure of ability to pay is superior to all others or that a single standard is appropriate in all cases." *Id.* at 116 n.7. *Adams* thus undercuts Defendant's argument that Plaintiff needed net worth figures or a balance sheet.

In *Martinez*, the plaintiff there "presented no evidence of [d]efendant's financial condition at trial." 2023 WL 1931836 at *24. The plaintiff also did not defend the sufficiency of the evidence, and the plaintiff's argument was the mistaken assertion that defendant had not met the prerequisite of moving under Rule 50(a). *Id.* at *22-23. Here, by contrast, the trial record is sufficient. The jury heard testimony from Defendant's own managers and corporate designee about Defendant's workforce, company-wide payroll, pay band, and raises to adjust for living standards, and Defendant's vehicle fleet and technology capabilities. The jury also saw Defendant's own Employee Handbook describing the enterprise to which Defendant belongs and championing the enterprise's very own policies. The Court found that this evidence gave the jury "a ballpark sense of the financial condition of Transdev Alternative Services specifically," irrespective of Exhibit 35. Lee Decl., Ex. D. at 114:22-115:10. Unlike *Adams* and *Martinez*, the trial record is not empty here.

*Farmers* does not help Defendant either. The plaintiff's financial condition evidence there came from an expert whose valuations were stale, unsupported, and problematic. Specifically, the expert valued the defendants' assets "without any consideration of liabilities," relied on bank account applications from years before trial making them "useless…at the time of trial," and offered income figures that were not supported by the appellate record. 33 Cal. App. 5th at 649-50. By contrast, Plaintiff's financial condition evidence here came from Defendant's managers and corporate representative who testified about Defendant's operations and footprint, Defendant's own Employee Handbook, and the Financial Report showing that it is part of a global conglomerate. Nothing from these cases holds that a jury may not consider that kind of evidence from the defendant itself. In

sum, none of Defendant's authorities warrant setting aside the jury's punitive damages award on this record.

## IV. CONCLUSION

The jury heard the evidence, received an instruction Defendant agreed to, rejected Defendant's argument that it had no basis to assess Defendant's financial condition, and returned a unanimous punitive award for $10 million. The Court has already found that the record contained legally sufficient evidence of Defendant's financial condition, and Defendant offers no reason to revisit that ruling. Plaintiff respectfully requests that the Court deny Defendant's Renewed Motion for Judgment as a Matter of Law in its entirety.

Dated: November 25, 2026

DIVERSITY LAW GROUP, P.C.

By: *_/s/ Larry W. Lee_*
Larry W. Lee
Mai Tulyathan
Kym Kanenaka
Attorneys for Plaintiff Daniel Stein